**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

KEVIN DANIEL WAGER,

     Plaintiff,                  No. 26-

v.                              Hon.

CITY OF DETROIT, and

OFFICER SHAMAR WOODS-
CAREY, JOHN DOE #1 & #2

     Defendants,

_____/

Cameron Bell (P81934)
**OLIVER BELL GROUP**
Attorneys for Plaintiff
50 W. Big Beaver Rd., Ste. 200
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

_____/

**COMPLAINT AND JURY DEMAND**

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the Complaint.

NOW COMES, KEVIN DANIEL WAGER, by and through his attorneys, OLIVER BELL GROUP, and for his Complaint and Jury Demand filed pursuant to Fed. R. Civ. P. 15(a)(1)(B), states as follows:

**Introduction**

1. This case arises from the falsification of a Personal Protection Order ("PPO") by Defendant Detroit Police Officer Shamar Woods-Carey leading to Plaintiff,

1

Kevin Daniel Wager being charged with Aggravated Stalking, Habitual 4th out of Wayne County.

2. Mr. Wager's experience appears to be a one-off instance, but is a direct result of the policies, procedures and tactics employed by the Detroit Police Department.

3. Mr. Wager suffered indignities to his person, violations of his constitutional rights and economic damages as result of Defendants' conduct.

## Parties

4. Plaintiff Kevin Daniel Wager is a resident of the state of Michigan.

5. Defendant Shamar Woods-Carey is an officer employed by the Detroit Police Department.

6. Defendant City of Detroit is a municipality within the State of Michigan and is sued pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

7. The Detroit Police Department is a subdivision of the City of Detroit in Michigan.

## Jurisdiction and Venue

8. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and §1343 for violation of federal laws, and pursuant to 28 U.S.C. §1357 for state law claims arising from the same set of circumstances.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because all acts that give rise to this cause of action occurred within Wayne County Michigan.

**Factual Allegations**

10. It was alleged that on or about December 31, 2022 that Mr. Wager stalked Defendant Shamar Woods-Carey. As a result, Mr. Wager was charged with Aggravated Stalking out of the 36th District Court in Detroit, MI.

11. A Preliminary Examination was held on Wednesday, August 7, 2024 at the 36th District Court in front of the Hon. Kenneth K. King.

12. During the examination, Mr. Wager's defense attorney moved for the case to be dismissed without prejudice.

13. Mr. Wager's defense attorney moved for the dismissal on the basis that through investigation he learned that the complaining witness was listed as "Shamar B Woods." The reporting officer who took at least five reports in that case was also listed as "Shamar B Woods."

14. Throughout all of the reports Defendant Shamar Woods-Carey refers to the complainant in third person as to "Shamar B Woods."

15. Never once in the multiple reports by Defendant Shamar Woods-Carey does she disclose throughout all of the discovery that she is one in the same person.

16. Shamar Carey is actually Shamar Woods-Carey.

17. Defendant Shamar Woods-Carey violated the police code of conduct. Furthermore, her actions are a violation of how to conduct police investigations and exposed herself to potential criminal liability for willful neglect of a public officer.

18. As a result of the argument by Mr. Wager's defense attorney, the case was dismissed without prejudice by Judge King in the best interest of justice.

19. As a result of Defendant Shamar Woods-Carey's actions, she was subsequently charged by Wayne County Prosecutor's office with "LEIN Information- Unauthorized Disclosure" out of 36th District Court on or about March 27, 2025.

20. Defendant Shamar Woods-Carey pled guilty to the above-referenced charge on May 12, 2025 and was sentenced immediately to court fines and costs along with six (6) months of probation.

21. A review hearing was held on November 12, 2025 where she was subsequently found to have complied with all of the conditions of her probation and the case was closed.

22. At all times during this incident, Defendant Shamar Woods-Carey was employed by Defendants City of Detroit and/or the Detroit Police Department.

23. Mr. Wager was not stalking Defendant Woods-Carey.

4

24. All of the allegations by Defendant Shamar Woods-Carey to Mr. Wager are falsified.

25. For example, in the Detroit Investigator's Report dated February 17, 2022, Defendant Shamar Woods-Carey alleges that on December 31, 2022 that Mr. Wager sent a text message through google meet at approximately 8:30 p.m. to her cell phone attaching an unknown Facebook link.

26. Defendant Shamar Woods-Carey continued filing false police reports at multiple precincts throughout the City of Detroit.

27. On December 31, 2022, Mr. Wager was not present at the home in which one of the falsified PPO's was attempted to be served.

28. There are several text messages in Mr. Wager's possession confirming that he was never actually served with a PPO.

29. Mr. Wager and Defendant Shamar Woods-Carey had been in an active relationship for approximately two and a half months.

30. Defendant Shamar Woods-Carey falsified throughout the police reports that she had not spoken with Mr. Wager.

31. Mr. Wager has text messages showing contact between him and Defendant Shamar Woods-Carey throughout the times/dates she states they did not have contact.

32. Mr. Wager's constitutional rights were continuously violated by Defendant Shamar Woods-Carey, City of Detroit and the Detroit Police Department.

33. As a result, Mr. Wager suffered significant fear, humiliation and embarrassment caused by Defendants.

34. Defendants caused fear in Mr. Wager by holding him for a significant period of time on knowingly false allegations.

35. Mr. Wager was humiliated and embarrassed by being held in the Detroit Detention Center ("DDC") and treated as a criminal for over 72 hours – in full view of the public – despite the absolute lack of probable cause justifying the arrest.

36. Mr. Wager was also humiliated and embarrassed by the dehumanizing conduct of Defendant Shamar Woods-Carey who threatened to shoot him in one of false police reports she filed.

37. Defendant Shamar Woods-Carey's false police reports have concerned the conduct of officers employed by the Detroit Police Department.

38. Upon information and belief, Defendants were aware of Mr. Wager's prior convictions leading to him being charged a habitual 4th offender by: 1) personal knowledge from being the subject of the police reports filed by Defendant Shamar Woods-Carey; 2) discussion with other officers and staff

within the Detroit Police Department; and/or 3) information contained within the Law Enforcement Information Network about Mr. Wager.

**Defendant City of Detroit**

39. The violation of Mr. Wager's constitutional rights was a direct result of the customs and/or policies of Defendant City of Detroit and the Detroit Police Department.

40. As background, Defendant City of Detroit has a long, documented history of systemic brutality, racial profiling and corruption, particularly targeting black residents. *See, e.g.,* Scott McClallen, *Michigan cities paid up to $63 million in police settlements from 2022-2025*, Michigan Capitol Confidential (May 1, 2025) *available at* https://www.michigancapitolconfidential.com/news/michigan-cities-paid-up-to-63-million-in-police-settlements-from-2022-to-2025; Randy Wimbley, *Woman filing lawsuit against Detroit Police Department, officer over October shooting*, WXYZ Detroit (February 5, 2026) *available at* https://www.wxyz.com/news/woman-files-25-million-lawsuit-after-being-shot-six-times-by-dpd-officer; Ross Jones, *Police misconduct claims cost Detroit taxpayers $19.1million since 2015*, WXYZ Detroit (June 14, 2018) *available at* https://www.wxyz.com/news/local-news/investigations/police-misconduct-claims-cost-detroit-taxpayers-191-million-since-2015.

41. Mr. Wager, had a relationship with Defendant Shamar Woods-Carey that ended after two and a half months. Throughout their relationship, Defendant Shamar Carey-Woods continuously filed false police reports to obtain a PPO knowing she was the reporting officer and complainant.

42. Upon information and belief, Defendant City of Detroit failed to enforce its own policies concerning the creation and accuracy of police reports. Specifically, Chapter 102—Standard of Conduct of Detroit Police Department's Directive Number 102.3.

43. Defendant City of Detroit failed to enforce its own policies, guidelines and procedures for officers in making lawful arrests and to provide supervisory review of arrests for probable cause. Specifically, Department Manual Directive 202.1 Arrests.

44. Detroit Police Department's Directive Number 102.3-6.6 Authority, Misuse, under number 5 states "Misuse of LEIN, NCIC or any other department or other law enforcement database."

45. Furthermore, Detroit Police Department's Directive Number 102.3-610 Confidentiality under number 4 states "Obtaining personal information, related to any citizen or member, for other than departmental use."

46. Also, Detroit Police Department's Directive Number 102.3-9 Prohibited Associations under number 1 states "Members shall not knowingly commence

8

or maintain a relationship or associate with convicted criminals or any person who is under criminal investigation, indictment, arrest, or incarceration by this, or another criminal justice agency, excluding traffic and municipal ordinance violations".

47. Defendant Shamar Woods-Carey pled guilty of the misdemeanor LEIN Information- Unauthorized Disclosure on May 12, 2025 in the 36th District Court in Detroit, MI.

48. Defendant Shamar Woods-Carey had an ongoing relationship with Plaintiff knowing that he was a convicted felon.

49. Defendant City of Detroit did not adequately enforce its own policies and procedures regarding the unauthorized use and/or misuse of the LEIN system.

50. Defendant City of Detroit maintains a custom or policy of failing to adequately train its officers and employees how to adhere to the Fourth Amendment and Equal Protection Clause of the Fourteenth Amendment.

51. Instead, it appears that Defendant City of Detroit maintained a policy of inadequate discipline and oversight that created a culture of impunity within the ranks.

52. In this case, this policy or lack of enforcement resulted in Mr. Wager being charged with aggravated stalking on the basis of false police reports that

should have been caught by the Wayne County Prosecutor's office upon submission for charges.

53. The filing of a false report of a felony is a felony in the State of Michigan.

54. Allegations in a police report by the same reporting officer and complaining witness demonstrates Defendant City of Detroit's indifference to the rights of citizens and lack of compliance with the Detroit Police Department's Code of Conduct.

55. Defendant Shamar Woods-Carey also knew exactly what to put into a police report to make it look as though it was Mr. Wager was actually stalking her and to also ensure it was compliant with the Fourth and Fourteenth Amendments, despite most, if not all, the contents being false.

56. Upon information and belief, none of the officers involved in the review of and/or approval of the false police reports, other than Defendant Shamar Woods-Carey, were subjected to any form of discipline for the incident.

57. These customs or policies disproportionately affect innocent individuals.

**COUNT I: 42 U.S.C. § 1983 – Fourth Amendment Malicious Prosecution**

58. Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

59. Defendants Woods-Carey and John Doe #1 & #2 created a false police report for the purpose of causing Mr. Wager to be charged with a criminal offense.

60. Defendants Woods-Carey and John Doe #1 & #2 knew the allegations in the police report she created were false and there was no probable cause to charge Mr. Wager with a crime.

61. Mr. Wager was charged with a felony of aggravated stalking.

62. Mr. Wager spent over 72 hours in custody as a result of Defendant Woods-Carey conduct.

63. The criminal case against Mr. Wager was dismissed without prejudice.

64. But for Defendants Woods-Carey and John Doe #1 & #2's falsified police report, Mr. Wager would not have been seized or charged with any crime.

**COUNT II: 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure**

65. Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

66. Employees of Defendant City of Detroit seized Mr. Wager within the meaning of the Fourth Amendment by arresting him on allegations of aggravated stalking.

67. Defendant Woods-Carey caused Mr. Wager to be seized by filing false police reports using her authority as a police officer working for the City of Detroit.

68. But for Defendant Woods-Carey false police reports, Mr. Wager would never have been seized.

69. The false police reports should have been identified and removed by Defendant City of Detroit's staff assigned to supervise Defendant Woods-

11

Carey and the individuals assigned to seek warrants from non-party Wayne County Prosecutor's Office.

70. Defendants cannot justify the arrest of Mr. Wager's on charges of aggravated stalking because the allegations are untrue and unsupported by any evidence.

71. Much as Defendant Woods-Carey lied about Mr. Wager stalking her, Defendant City of Detroit its employees in the Detroit Police Department failed to recognize the falsity of the allegations made or even the impropriety of the complaining witness being the reporting officer.

72. Because Defendant City of Detroit lacked probable cause for the arrest of Mr. Wager, they violated Mr. Wager's Fourth Amendment by arresting him.

73. Moreover, even if Defendants City of Detroit and Detroit Police Department had probable cause to initiate an arrest on Mr. Wager, they, and Defendant Woods-Carey, lacked the probable cause to file a police report alleging that a felony had been committed.

74. Upon information and belief, Defendant City of Detroit failed to maintain and/or enforce policies to prevent its officers from abusing their authority by failing to prevent its officers from being the complaining witness *and* reporting officer on police reports.

75. Upon information and belief, Defendant City of Detroit failed to supervise or review its employee's use of the LEIN system – to prevent unauthorized and corrupt practices.

76. Specifically, because the allegations claimed by Defendant Woods-Carey were false, she knew they were false and she was the complaining witness and reporting officer in the PPO's in violation of Detroit Police Department's Code of Conduct- Directive Number 102.3 and 202.1.

   a. Detroit Police Department Manual Directive Number 202.1 provides "When any individual who has been arrested is brought into the DDC, the officer-in-charge (OIC) of the DDC desk shall review the circumstances of the arrest and confirm whether or not probable cause existed at the time of the arrest.;"

   b. Detroit Police Department Policy No. 202.1 - 3.10 "Supervisory Review" provides that "[t]he officer in charge of the DDC desk shall review the circumstances of every arrest conveyed to the DDC and conduct an independent probable cause determination."

77. Despite having these policies on paper, Defendant City of Detroit maintained an unofficial custom or policy of either no review, or inadequate review of the probable cause supporting an arrest.

13

78. Had Defendant City of Detroit's employees followed the written policies, Mr. Wager would never have been charged criminally and would have been released shortly after his arrest.

79. Defendant City of Detroit is liable for all of the policies that led to this incident.

**COUNT III: 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection Clause**

80. Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

81. The Detroit Police Department maintains customs and policies that target individuals with unconstitutional conduct such as false charges brought by an officer who is the complaining witness and reporting officer.

82. The officer Defendant in this case was acting pursuant to that policy that led to Mr. Wager being charged with Aggravated Stalking.

83. Mr. Wager was the victim of these customs and policies as Defendants Woods-Carey and Detroit Police Department lacked any valid probable cause to arrest him.

84. Defendants City of Detroit and Detroit Police Department assumed that, because Defendant Woods-Carey was an officer of Detroit Police Department that the false PPO's she filed were valid without recognizing that she was the complaining witness and reporting officer.

85. Defendants went to extraordinary lengths to validate that Mr. Wager was acting consistently with the falsified reports filed by Defendant Woods-Carey.

**Count IV: 42 U.S.C. §--Failure to Train and Supervise As to Defendant Detroit Police Department**

86. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87. The Detroit Police Department is a department within the City of Detroit, a named Defendant in this case.

88. At all times relevant to this action, Defendant Detroit Police Department had policymaking authority and otherwise controlled the training and supervisory practices of the Detroit Police Department.

89. Defendant Detroit Police Department has a policy, practice and custom of failing to train and supervise police officers with respect to a clear constitutional duty implicated in a recurrent situation that police officers are certain to face—*i.e.,* the routine review of police reports, PPO's.

90. Defendant City of Detroit is aware that some of its officers engage in misconduct or other corrupt practices.

91. Defendant City of Detroit has failed to implement and enforce policy and procedures that would detect and/or prevent its employees from abusing their authority as police officers.

92. Specifically, Defendant City of Detroit:

15

a. Failed to implement and enforce policies requiring review of its employees use of the LEIN system to detect unauthorized usage;

b. Failed to implement and enforce policies preventing its employees being the complaining witness and reporting officer;

c. Failed to implement and enforce policies requiring a review of the probable cause underlying arrests; and

d. Failed to implement and enforce policies requiring a review of the probable cause for an arrest before seeking an arrest warrant or to file charges.

93. Defendant Detroit Police Department should have known that Detroit Police Department officers would be placed in such a recurrent situation.

94. Defendant City of Detroit's employees at the Detroit Police Department routinely file police reports that serve as the basis for seeking an arrest warrant.

95. Upon information and belief, officers employed by Defendant Detroit Police Department have a history of numerous complaints related to unlawful arrests, shootings and misconduct investigations. This pattern of violations made plainly obvious the need for training and supervising officers on how to avoid arresting individuals on false charges not supported by probable cause and in the best interests of justice.

96. Through the adoption of this policy, practice and custom of failing to train and supervise its police officers to prevent the arresting of individuals based on false allegations, Defendant Detroit Police Department acted with deliberate indifference to the clearly established rights secured to Mr. Wager, under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable search and seizures and the arrests based on an officer as the reporting officer and complaining witness.

97. By engaging in acts of filing PPO's as the reporting officer and complaining witness against Mr. Wager that resulted in him being charged with Aggravated Stalking causing fear, humiliation and embarrassment, Defendant Woods-Carey was acting pursuant to, and within the scope of, Defendant Detroit Police Department's policies, practices and customs of failing to train and supervise Detroit Police Department officers.

98. By failing to intervene to prevent a false PPO being submitted to the Wayne County Prosecutor's office on charges of Aggravated Stalking against Mr. Wager that resulted in fear, humiliation and embarrassment, Defendant Detroit Police Department were acting pursuit to, and within the scope of, Defendant City of Detroit's policies, practices and customs of failing to train and supervise Detroit Police Department officers.

17

99. Defendant City of Detroit's policies, practices and customs of failing to train and supervise Detroit Police Department officers were the moving force and the proximate and producing cause of Mr. Wager's injuries.

100. Due to the injuries suffered by Mr. Wager, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Mr. Wager has incurred special damages, including expenses related to treatment with a therapist. He may continue to incur other expenses and other special damages, in amounts to be established at trial.

101. Mr. Wager is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

102. In depriving Mr. Wager of his rights under the United States Constitution, Defendant City of Detroit acted under color of law in its capacity as a municipal entity organized under the laws of Michigan, and its actions and omissions were conducted within the scope of Defendant City of Detroit's official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

### COUNT V: 42 U.S.C. § 1983 – Failure to Discipline as to Defendant City of Detroit

103.    Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

104.    At all times relevant to this action, Defendant City of Detroit had policymaking authority with respect to the disciplinary practices of the Detroit Police Department.

105.    Defendant City of Detroit and the Detroit Police Department have a *de facto* custom of failing to discipline police officers who violate Detroit Police Department's active policies.

106.    The filing of PPO's by Defendant Woods-Carey put Defendant City of Detroit on actual or constructive notice of the constitutional violations resulting from its *de facto* custom of failing to discipline officers for violating Detroit Police Department's active policies regarding the review of incident reports.

107.    In this case, Defendant City of Detroit had actual or constructive notice because Defendant Woods-Carey filed incident reports as the complaining witness and reporting officer describing the alleged aggravated stalking by Mr. Wager.

108.    Defendant City of Detroit failed to discipline Defendant Woods-Carey for filing a false incident report on allegations of stalking as she was the complaining witness and reporting officer.

19

109.     Defendant City of Detroit adopted official policies, practices and customs that provided for the failure to supervise and discipline Detroit Police Department officers when they violate standards of conduct. Defendant City of Detroit accordingly acted with deliberate indifference to the clearly established rights secured to Mr. Wager under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and free from the use of false allegations against a person.

110.     By engaging in acts of falsely filed PPO's leading to falsely filed charges that resulted in injuries to his person, Defendant Woods-Carey acted with impunity because of Defendant City of Detroit's adoption of the aforementioned policies, practices and customs.

111.     These policies, practices and customs were the proximate and producing cause of Mr. Wager's injuries.

112.     Due to the injuries suffered by Mr. Wager, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Mr. Wager has incurred special damages, including treating with a therapist. He may continue to incur other expenses and other special damages, in amounts to be established at trial.

113.     Mr. Wager is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

114.     In depriving Mr. Wager of his rights under the United States Constitution, Defendant City of Detroit acted under color of law in its capacity as a municipal entity organized under the laws of Michigan, and its actions and omissions were conducted within the scope of Defendant City of Detroit's official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**COUNT VI: State Law – Elliot-Larsen Civil Rights Act MCL 37.201 *et seq*.**

115.     Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

116.     The Detroit Police Department maintains customs and policies that do not accurately supervise the review of PPOs in which the reporting officer is the complaining witness that leads to false arrests unsupported by probable cause.

117.     The officer Defendant Woods-Carey in this case was acting pursuant to that policy of impunity.

118.     Mr. Wager was the victim of these customs and policies as Defendants City of Detroit and Detroit Police Department lacked any probable cause to

21

justify the submission of charges of Aggravated Stalking charges to the Wayne County Prosecutor's office.

119.    Defendants arrested Mr. Wager without properly reviewing the incident reports filed by Defendant Officer Woods-Carey as she was the reporting officer and complaining witness.

120.    All Defendants assumed that, because the PPO's were filed under an alias of Defendant Woods-Carey that they were not the same person thus justifying the submission of PPO's and/or incident reports to Wayne County Prosecutor's office for charges of Aggravated Stalking.

121.    Defendants went to extraordinary lengths to prove that Mr. Wager was acting consistently with the false allegations by Defendant Woods-Carey in the incident reports.

**COUNT VII: State Law – Intentional Infliction of Emotional Distress**

122.    Plaintiff reincorporates the preceding paragraphs as if fully restated herein.

123.    Defendant Shamar Woods-Carey engaged in outrageous conduct when she filed false police reports alleging Mr. Wager was stalking her.

124.    Defendant Shamar Woods-Carey further engaged in outrageous conduct when she searched Mr. Wager's criminal history via LEIN for no

valid legal reason other than to harass, embarrass, intimidate and ultimately have Mr. Wager charged with aggravated stalking.

125. Defendant Shamar Woods-Carey used her position and authority to engage in this conduct.

126. Defendant Shamar Woods-Carey had no legitimate justification to do so as she knew the probability of Mr. Wager being charged with aggravated stalking was high given the multiple false police reports she filed.

127. Defendant Shamar Woods-Carey engaged in this conduct either to intentionally inflict emotional distress on Mr. Wager or with absolute disregard to the risk that Mr. Wager would suffer severe emotional distress.

128. As a result of Defendant Shamar Woods-Carey's conduct, Mr. Wager suffered significant mental injury in the form of outrage, humiliation, and indignation for the violation of his person.

### Count VIII- State Law- Gross Negligence

129. Defendant John Doe's conduct demonstrated a substantial lack of concern for whether injury would result.

130. Her actions were the proximate cause of Plaintiff's injuries.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kevin Wager respectfully requests that this Court:

1. Enter judgment against Defendants jointly and severally;

23

2.  Award compensatory damages in excess of $5,000,000.00;

3.  Award nominal, and punitive damages for the violations of his constitutional, statutory, and common law rights set forth above;

4.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and the Elliot-Larsen Civil Rights Act;

5.  An injunction requiring that Defendant City of Detroit implement new policies that address the constitutional disregard of its law enforcement personnel; and

6.  Any other relief this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury.

Dated: April 2, 2026                          Respectfully submitted,

*/s/ Cameron Bell*
Cameron Bell (P81934)
OLIVER BELL GROUP
Attorneys for Plaintiff
50 W. Big Beaver Rd., Ste. 200
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

24